## No. 9054.

### THE STATE OF LOUISIANA VS. LOUIS BLASER.

36  363
46  704
36  363
d104 603

The ordinance of the city of New Orleans which exacts twenty-five cents for every load of supplies, especially in so far as it affects the products of gardeners sold by themselves at any of the public markets of the city, is intended to raise a revenue.

Either as a tax on property or as a license, it is unconstitutional, null and void.

APPEAL from the Second Recorder's Court of New Orleans. Ford, J.

*Chas. F. Buck* and *Wynne Rogers* for Plaintiff and Appellee.

*Blanc & Butler* for Defendant and Appellant:

1. The "Gardeners' Tax," levied by Section 9 of City Ordinance 479, C. S., is admitted to be without authority under the taxing power delegated to the city of New Orleans.
2. The taxing power of the city is its only power for obtaining *revenue*, by exactions or contributions levied upon its citizens, and that power is limited to the *ad valorem* or property tax and a tax on occupations known as the license tax. The first of these is again limited to ten mills on the dollar of valuation. Const. 202, 203, 206, 209; City Charter, Acts 1882, 14; 33 A. 833; 34 A. 840, 1050; Cooley, Taxation, 209.
3. The counsel for the city argues that the "tax" is a police regulation imposed under the police power. This we deny.

4.  The tax is a palpable effort to obtain revenue and the police power cannot be used for purposes of revenue. Delcambre vs. Clere. 34 A. 1052; Dillon, Mun. Corp. 3d ed, § 768 (old ed § 609); 34 A. 750; 33 N, J. Law 280; 7 Ill. 406.

5.  Primarily, all exacted contributions are for revenue, nor can they be referred to the police power unless it is clearly shown to be for police regulation—that they are *exclusively* used for that purpose. 34 A. 1052.

6.  An exaction of money for the pursuit of an ordinary business, in its nature useful and advantageous to a community, is to be taken as one made for revenue and not a police regulation. 34 A. 750.

7.  Nothing in the ordinance tends to show that the "tax" is imposed to defray the mere cost of a permit or regulation. The amount of twenty-five cents per day, or $91 50 per annum, is so extortionate as to divest it of all semblance of a police-power fee. In none of the instances of the imposition of a fee under the police power on vendors of provisions, or on such ordinary occupations necessary to the welfare of the citizen, has a like amount been admitted as proper. The amount is itself evidence of the purpose to obtain revenue. 31 A. 828; Ash vs. People, 11 Mich. 347; City vs. Bryan, 10 Ohio, N. S. 625; Magin vs. Yennville, 3 Ala. 137; Dillon. Mun. Corp. § 361, note, § 386, note; St. Paul vs. Treager, 25 Minn. 248.

8.  The city of New Orleans can exercise no police power beyond that granted by the Legislature  What the city claims to do as a police regulation must have been clearly granted by the General Assembly. Cooley, Const. Lim. 191, 387; 29 A. 21, 261; 32 A. 923, 1293; 34 A. 750; 34 A. 1051; Dillon, Mun Corp. 3d ed. § 141; Cooley, Taxation, 408.

9.  The grant of power to exact money for police regulation is more narrowly construed than that for revenue. Cooley, Taxation, 403.

10. When the power to exact money for police regulation has been allowed, the power was granted in terms expressly giving the right to "tax" or to require a "license" or "permit," and even then it was restricted to a reasonable fee for issuing the "license." The power to regulate and make police rules for government of markets, vendors of commodities, etc., does not include the power to exact money or license fees. Dillon. Mun. Corp. 3d ed. §§ 361, 357 (2d ed. § 291); § 768 (2d ed. 609); 358, note 1; 359, note: 361; 25 Minn. 248; 7 Ind. 86; 16 Wis. 298; 11 Mich. 347; 29 Iowa, 123; 39 Conn. 144; 41 N. J. L. 71; 34 A. 1050.

*Sambola & Ducros* on the same side.

---

The opinion of the Court was delivered by

POCHÉ, J.  The defendant resists the enforcement of an ordinance of the city of New Orleans, exacting from gardeners the payment of twenty-five cents for every load of vegetables which they convey to, in carts or wagons, and sell at any of the public markets of the city, in case they do not occupy a stall or stalls in said market.

He has taken this appeal from an adverse judgment.

He charges that the exaction is a tax or license for revenue, and that in either case, it is violative of the Constitution and unwarranted by law.

The city attorney contends that, although the ordinance calls for the payment of money, it is not necessarily a tax or license for revenue and that the right to impose and enforce the exaction is derived from

the city's police powers, as an incident of its power to establish and regulate public markets.

The record shows that the defendant is a gardener, and that he raises the vegetables which he conveys to, and offers for sale, near the public markets in this city, in his own wagon, for the running of which he pays the regular city license. Hence it is clear that the exaction cannot be enforced if viewed either in the light of a tax or a license, or if viewed and resting under the city's taxing power.

This proposition is conceded by the city attorney, who, as stated above, rests his case on the proposition that the right claimed in the premises, is derived from the police power, as contradistinguished from the taxing power.

The question for solution in the case is, therefore, to ascertain whether the present ordinance rests on the police or on the taxing power of the city. It reads as follows:

"That each and every cart or wagon conveying supplies to the public markets in this city, for sale by any person or persons not occupying a stall or stalls in said market, shall pay for each and every load twenty-five cents, for which payment or payments the driver or owner of each and every cart shall receive a receipt, which receipt shall entitle him to visit and deliver his goods at each and all of the public markets of the city on the day such payment or payments have been made. All butchers' carts, and all other carts and wagons owned by occupants of stalls and stands in any of the public markets and used in conveying supplies to such stands and stalls, shall be exempt from this tax. No cart or wagon shall remain at any of said public markets except between the hours of 3 a. m. and 12 m."

It will at once be noticed that the ordinance discriminates in favor of the carts or wagons owned by persons occupying stalls in the markets.

Hence, it cannot be said that the exaction is intended as a means to meet the expense of the police necessary to preserve order among the wagons and the teamsters, or for the expense of maintaining the cleanliness in the portions of the streets thus occupied at stated times of the day. In the absence of the wagons falling in the category of the defendant's, other vehicles and other drivers would be there and would need the same supervision and cause the same filth necessary to be cleansed.

It cannot be said that the exaction is necessary to meet the fee for issuing the license authorizing the dealer to back up against the *ban-*

*quette.* At the rate of only one load each day, the dealer would pay some $91 a year, an amount out of all proportion to the probable cost of such permit or license.

Nor could the exaction be justified on the ground of the market facilities or accommodations afforded to the gardeners by the city or market lessees. The record shows that they are not even afforded a shelter against either rain or sun.

It further appears that the sums thus collected enure to the immediate or direct benefit of the market lessees or farmers, on whom is imposed the duty and expense of providing for the cleanliness of the markets and the adjacent streets.

The advantage to be derived by the city from the exaction is the enhanced rate at which the markets will be leased. The consequence is, therefore, an increase of her revenue. As stated above, the presence of these dealers and their teams at the public markets does not entail an additional expense to the city, but the contribution required of them has a direct tendency to increase her revenue. Hence the conclusion that the whole scheme is simply a mode of creating a revenue and that its enforcement cannot be justified under the police power.

If viewed in the light of a tax on the dealer's property, it is unconstitutional under the provisions of Articles 203 and 209 of the Constitution; if considered as a license, it is violative of Article 206. State vs. Putamia, 34 A. 750; City vs. Graves, 34 A. 840; Delcambre vs. Clerc, 34 A. 1050.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed. It is now ordered that the prosecution against the defendant be dismissed.

---

### CONCURRING OPINION.

BERMUDEZ, C. J.    I rest my concurrence on the decree on the ground that the facts disclosed do not justify the adoption and enforcement of the attacked sections of the ordinance.

In the exercise of their police power, which implies those to regulate markets, streets and public places, municipal corporations have the unquestionable right to pass and execute such legislation, *provided* the exaction be necessary and reasonable, actually used for *police* and not for *revenue* purposes. Burroughs on Tax, 392; Cooley C. L. 231, 396, 403, 572; Dillon M. C. 25, 28, 91, 118, 166, 294, 384, 742; 2 Kent, 278, 339; Blackstone, 4, 162; Wartman's case, 33 Pa. St. 202, 9; Nightingale *in re*, 11 Peck Mass. 168; Cincinnati vs. Buckingham, 10 Ohio in

Bank, 261; Ash vs. People, 11 Mich. 347; Chicago Warehouse cases, 63 Ill. 80; Johnson vs. Philadelphia, 60 Penn. 451; Bush vs. Seabury, 8 Johns. N. Y. 408. See also, 7 Cowan, 349; 9 Mich. 253; 15 Conn. 475, 501; 3 Ala. 137, 28, 577; 6 Ala. 899; 7 Ind. 86; 8 Ind. 34, 57; 11 Rich. S. C. Law, 55; 25 Mo. 37; 3 Wall. 320; 12 Wall. 349; 94 U. S. 113, 125; 97 U. S. 25.

See also our jurisprudence in the following cases: 2 L. 219; 4 A. 278, 335; 14 A. 842; 15 A. 337; 23 A. 723; 26 A. 340; 31 A. 828; 32 A. 91; 33 A. 483; 34 A. 750, 1050.