THEO. NOEL

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 19, 1900—Rehearing denied December 6, 1900.*

.187   587
p187   625

187   587
p188   243

187   587
205  ⁴505

1. STATUTES—*when law is invalid for conferring arbitrary power.* A law which invests any body of officials with arbitrary discretion, which may be exercised in the interest of a favored few, is invalid because of the opportunity it affords for unjust discrimination.

2. CONSTITUTIONAL LAW—*section 8 of Pharmacy act of 1895 is invalid.* Section 8 of the Pharmacy act, (Laws of 1895, p. 246,) providing that the Board of Pharmacy may, "in their discretion," issue permits to parties engaged in business in villages or other localities to sell domestic remedies and proprietary medicines, is invalid for conferring discretionary power upon and delegating legislative power to such board.

3. SAME—*part of Pharmacy act of 1895 is unconstitutional.* The provisions of the Pharmacy act of 1895 which, in effect, confer upon registered pharmacists the exclusive right to sell patent or proprietary medicines and domestic remedies without requiring such pharmacists to make any examination or analysis thereof, are invalid, as conferring a special power, in violation of section 22 of article 4 of the constitution.

4. SAME—*provisions prohibiting parties not registered pharmacists from selling their own compounds are valid.* The provisions of the Pharmacy act of 1895, in so far as they prohibit persons not registered pharmacists from retailing or dispensing drugs, medicines or poisons prepared or compounded by themselves, are valid, being a proper exercise of police power in the interest of the public health.

WILKIN, J., dissenting.

APPEAL from the Criminal Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This is an action of debt, brought by the People of the State of Illinois against Theo. Noel, the appellant, to recover a penalty for the violation of section 2 of the Pharmacy act. On September 1, 1899, a judgment was rendered before a justice of the peace in Cook county on the verdict of a jury against the appellant, and in favor of the appellees, for twenty dollars and costs. An appeal was taken by the appellant to the criminal court of Cook

county, where the cause was submitted to the court for trial without a jury, and, on February 2, 1900, judgment was rendered for the People against the appellant for twenty dollars and costs. The present appeal is prosecuted from such judgment of the criminal court of Cook county.

Ever since 1880 appellant has been, and is, engaged in preparing and selling in various forms, but principally in a powdered state, a kind of iron ore, called "Vitæ-Ore." This ore, when it has been mined and exposed for some years to the air, becomes disintegrated, or slacked, somewhat like burned limestone. When it has reached this stage, if it be put in water, it makes an agreeable sub-acid drink, which possesses, or is claimed to possess, valuable medicinal qualities. Appellant puts it up in powdered form, in sealed packages, from two ounces in weight upward, and in this form it is distributed and sold.

In addition to this Vitæ-Ore, the appellant has been, and is, manufacturing and selling a number of other medicinal articles, such as tooth powder, hair tonic, complexion cream, etc. His place of business is, and for some years has been, at 860 West Polk street, in Chicago, where he employs a large force of men and women, preparing and putting up these various articles in sealed packages, boxes, bottles, etc., and shipping them out by freight, express or mail to his agents. He does not sell at retail any more than any ordinary wholesale merchant, but, if applied to, sells one or more sealed packages or articles, as the applicant may desire. As general manager of the business, he employs his son, Dr. Joseph Noel, a graduate of the Jefferson Medical College of Philadelphia, and a physician, who has been engaged for several years in general practice, and is regularly licensed to practice medicine in the State of Illinois.

On October 30, 1897, appellant applied to the State Board of Pharmacy at Springfield for a license to sell his

products, tendering with such application the statutory fee of one dollar therefor, but the board refused to grant said license without giving any reason for such refusal. On June 28, 1899, a person in appellant's employment sold a package of said Vitæ-Ore; and the person, so selling it, was not then a registered pharmacist, or assistant registered pharmacist, or a pharmacist's apprentice. The purchaser of said package paid a dollar for it. The package was put in evidence. It was in a strong paper bag, securely sealed up, and contained about two ounces of the powder, labeled "Concentrated Compound Extract of Vitæ-Ore Elixir," etc. It is admitted that appellant's place of business was not a drug store, and that drugs were not kept there.

E. A. SHERBURNE, for appellant.

CHARLES S. DENEEN, State's Attorney, (FRED L. FAKE, GABRIEL J. NORDEN, and KITT GOULD, of counsel,) for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the trial of this case in the court below, the appellant asked the court to hold as law, in the decision of the case, several propositions of law, questioning the constitutionality of sections 2 and 8 of the act of the legislature of Illinois entitled: "An act to regulate the practice of pharmacy in the State of Illinois," as amended and in force July 1, 1895. (Hurd's Stat. of Ill. 1897, pp. 1075, 1076). These propositions of law were refused by the trial court, and to the ruling of the court in this regard exception was duly taken by the appellant. The question, thus presented for our consideration, is the constitutionality of said sections 2 and 8 of the Pharmacy act.

Section 2 is as follows: "It shall be unlawful for any person not a registered pharmacist within the meaning

of this act to open or conduct any pharmacy, dispensary, drug store, apothecary shop or store, for the purpose of retailing, compounding or dispensing drugs, medicines, or poisons, and any person violating the provisions of this section shall be liable to a penalty of not less than twenty nor more than one hundred dollars for every such violation: *Provided, however*, that nothing in this act shall prevent any person or persons owning a drug store or pharmacy who shall employ and place in active and personal charge of the same, a registered pharmacist, and that nothing herein contained shall apply to nor in any manner interfere with the practice of any physician, or prevent him from supplying to his patients such articles as may seem to him proper, nor with the exclusively wholesale business of any wholesale druggist; nor with the sale of patent and proprietary medicines and domestic remedies by retail dealers in localities as hereinafter provided."

Section 8 of the act is as follows: "The Board of Pharmacy may in their discretion issue permits to persons, firms or corporations engaged in business in villages or other localities, empowering them to sell the usual domestic remedies and proprietary medicines under such restrictions as the Board of Pharmacy may deem proper. Each applicant for this permit shall pay to the said board the sum of one dollar before said permit shall issue. Said permit shall specifically state just what the holder thereof is allowed to sell."

Section 4 of the act is as follows: "The term drug store or pharmacy shall for all purposes of this act be construed to mean a store, shop or other place of business where drugs, medicines or poisons are compounded, dispensed or sold at retail."

The proviso to section 2 provides, that nothing contained in the act shall apply to, or interfere with, the sale of patent and proprietary medicines and domestic remedies by retail dealers in localities "as hereinafter

provided." The words "as hereinafter provided" refer to
section 8 of the act. The latter section confers upon the
Board of Pharmacy the power in their discretion to issue
permits to persons, firms or corporations engaged in
business in villages or other localities, empowering them
to sell the usual domestic remedies and proprietary medi-
cines under such restrictions as the board may deem
proper. It is manifest, that section 8 vests an arbitrary
power in the Board of Pharmacy to say who shall, and
who shall not, sell the usual domestic and proprietary
remedies in villages and other localities, and just exactly
what they are allowed to sell. Section 8 in no way reg-
ulates or controls the discretion vested thereby in the
board. The official discretion, conferred upon the board,
is unregulated, and not subjected to any permanent pro-
visions operating generally and impartially. No condi-
tions are prescribed, upon which the permit, authorizing
the sale of the usual domestic remedies and proprietary
medicines, is to be issued. A law, which thus invests
any board, or body of officials, with a discretion, which
is purely arbitrary, and which may be exercised in the
interest of a favored few, is invalid. It makes an unjust
discrimination between persons coming within the same
class. A person, firm or corporation engaged in business
in a village or other locality may sell these domestic rem-
edies and proprietary medicines if a permit is obtained
from the Board of Pharmacy, provided such board sees
fit in its discretion, and under such restrictions as it may
deem proper, to issue such permit. The board is thus au-
thorized to confer a privilege upon one person, firm or
corporation, and to deny the same privilege to any other
person, firm or corporation, and is not required to be
governed, in doing so, by any fixed rules or regulations,
but may be moved thereto only by its own caprice, or fa-
voritism. Laws, thus conferring discretionary and arbi-
trary power upon statutory officials, are not only invalid
for the reasons already stated, but amount in effect to a

delegation by the legislature of its legislative functions to the board or officials in question. The legislature undoubtedly has the power, in the interest of the public health, to pass a law, regulating the disposition of these domestic remedies and proprietary medicines; but, instead of doing so in section 8, it has abdicated its own power upon the subject, and conferred such power upon the Board of Pharmacy to be exercised according to the discretion of the board. (*Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9; *City of Cairo* v. *Feuchter,* 159 id. 155; *City of Monmouth* v. *Popel,* 183 id. 634).

But, independently of the considerations thus far presented, section 2 not only forbids any person to compound or dispense drugs or medicines, and sell the drugs or medicines, so compounded, at retail unless such person is a registered pharmacist, but it also forbids any person to sell patent and proprietary medicines and domestic remedies at retail unless such person is a registered pharmacist. In other words, a druggist is not only forbidden by section 2 to sell drugs, compounded by himself, unless he or his employee is a registered pharmacist, but he is also forbidden to sell patent and proprietary medicines and domestic remedies, not compounded by himself, unless he or his employee is a registered pharmacist. Section 2 thus confers upon registered pharmacists the exclusive right to sell at retail patent and proprietary medicines and domestic remedies. This is apparent from the last clause of the proviso to section 2. The fact, that the sale of these remedies in certain localities is mentioned as an exception, makes it clear that their sale in other places was included in the prohibition with all other drugs, medicines and poisons. "When the legislature has attached a proviso to a section, the natural presumption is that, but for the proviso, the enacting part of the statute would have included the subject matter of the proviso." (23 Am. & Eng. Ency. of Law, p. 437).

The act contains nowhere any provision for the inspection or analysis of these patent or proprietary medicines by the registered pharmacists, who are clothed with the power to sell them.

Undoubtedly the legislature has the right, under the police power, to pass enactments for the benefit and promotion of the public health.  But it is well settled, that the exercise of the police power must be limited to such measures, as are designed to promote the public health, the public morals, the public safety, or the public welfare. (*City of Chicago* v. *Netcher*, 183 Ill. 104).  When it can be seen from the provisions of a statute, that it has no tendency to promote the public health, safety, morals, comfort or welfare, the courts are authorized to declare it invalid.  It is unquestionably true, that the State has as much right to regulate the sale of patent and proprietary medicines and domestic remedies, as it has to regulate the sale of any other kinds of medicines and remedies.  But these patent and proprietary medicines and remedies are generally put up in sealed packages.  In this form they can as well be sold by any person as by a registered pharmacist.  The vice of the present Pharmacy act is, that it gives to the registered pharmacists the exclusive privilege of selling these patent and proprietary medicines and remedies, and excludes all other persons from doing so, while, at the same time, it makes no requirement of such registered pharmacists that they make any analysis, inspection or examination of the same.  In this regard the act gives to registered pharmacists a monopoly of the business of selling patent medicines without in any manner protecting the public health.  The public health is not protected by limiting these sales to registered pharmacists, who make no examination of what they sell.

Counsel for the People claim, that registered pharmacists are more likely to know the qualities of these patent medicines than other persons, who are not regis-

187—38

tered pharmacists. But registered pharmacists will be as apt, as other men, to sell such patent medicines as there is a public demand for, when they are relieved of all responsibility for the character of such medicines, and are not required in any way to guarantee their character or adaptability to the cures, which they claim to effect.

Section 2 of article 2 of the constitution of this State provides, that "no person shall be deprived of life, liberty or property, without due process of law." Involved in the right to own property is the right to sell it; and, when the owner is deprived of the right to sell his property, he is deprived of his property within the meaning of the constitution, because there is thereby taken from him one of the incidents of ownership. Section 22 of article 4 of the constitution provides, that "the General Assembly shall not pass local or special laws    *    *    * for    *    *    * granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." To confer upon registered pharmacists the right to sell these patent and proprietary medicines, without requiring of them to make any inspection or examination of the same, is to confer upon them a special and exclusive privilege in violation of said section 22 of article 4, when, at the same time, such right of sale is denied to all other persons, firms or corporations.

The views thus expressed are sustained by a decision, made by the Supreme Court of Minnesota in the case of *State* v. *Donaldson*, 41 Minn. 74. In that case, the Supreme Court of Minnesota, in commenting upon the provisions of an act similar to the Pharmacy act of this State, say: "The manifest purpose of the act was to protect the public against the mistakes and ignorance of incompetent and unskilled persons in the preparation and sale of drugs and medicines.    *    *    * This is the expressed object of the general provisions of this act. They all look to the protection of the health and lives of the public by restricting the business of preparing and

dispensing or selling drugs and medicines to those who have the requisite knowledge and skill on the subject. * * * Now, it is a matter of common knowledge that what are called 'patent' or 'proprietary' medicines are prepared ready for immediate use by the public, put up in packages or bottles labeled with the name, and accompanied with wrappers containing directions for their use, and the conditions for which they are specifics. * * * There is nothing that calls into use any skill or science on the part of the one who sells them. One man can do it just as well as another. * * * The fact that the seller is a pharmacist, of itself, furnishes no protection to the public. * * * Merely to limit their sale to pharmacists would furnish no protection to the public, without some further regulation as to inspection or analysis that would tend to exclude from sale those that might be injurious to health, or something requiring pharmacists to exercise their skill and science in determining the quality and properties of such as they sold. If we turn to our statute we find an entire absence of any such provisions. * * * Had the act made pharmacists responsible for their quality, this might have had some tendency to protect the public." After disposing of the suggestion, as being "too uncertain and attenuated to be entitled to any weight," that the mere fact of limiting the sale to pharmacists would tend to protect the public because they would be more likely than others to know the qualities of patent medicines, the court then proceeds as follows: "In the absence of some other regulations, a statute merely limiting the sale of patent medicines to a particular class would not and could not have any natural or reasonable tendency to protect the public. Such a law would not go far enough to amount to a police regulation. It would be merely giving a certain class of men a monopoly of the trade. This is not within the police power of the State. * * . * A law enacted in the exercise of the police power must in fact be a police

· law.    If it be a law· for the protection of public health, it must be a health law having some relation to public health.    *   *   *    If it is apparent on the face of the act that its provisions, from their very nature, cannot and will not conduce to any legitimate police purpose, it is the right as well as the duty of the court to pronounce it invalid, as in excess of legislative power and an arbitrary and unwarranted interference with the right of the citizen to pursue any lawful occupation.    According to the construction claimed for it, the provision of the act as to the sale of patent or proprietary medicines would be of just this character.    It would be giving pharmacists a monopoly of the business, without in any manner protecting public health."    The reasoning of the Minnesota court is precisely applicable to the case at bar, for the reason that, in the Illinois Pharmacy act, as was the case with the Minnesota Pharmacy act, there is an entire absence of any regulation as to such inspection or analysis of these patent or proprietary medicines by registered pharmacists, as would tend to exclude from sale those medicines that might be injurious to health; nor is there anything in the Illinois act requiring registered pharmacists to exercise their skill and science in determining the quality or properties of such patent or proprietary medicines as they may sell.

We are, however, not disposed to hold that the whole act is unconstitutional because of the limitation of the right to sell these patent or proprietary medicines to such persons as are registered pharmacists.    An act of the legislature may be opposed in some of its provisions to the constitution, while others standing by themselves would be unobjectionable.    The fact, that a part of a statute may be unconstitutional, will not authorize the courts to declare the remainder void, unless all the provisions are so connected in subject matter, and are so dependent on each other, that the legislature will not be presumed to have passed the one without the other.    The

valid and invalid provisions may even be contained in the same section, and yet be perfectly distinct and separate, so that the one may stand though the other must fall. Where a statute attempts to accomplish two or more objects, and is void as to one, it may still be complete and valid as to the other. (Cooley's Const. Lim.— 5th ed.—pp. 211-213; *Cicero Lumber Co.* v. *Town of Cicero, supra; People ex rel.* v. *Illinois State Reformatory,* 148 Ill. 413; *Donnersberger* v. *Prendergast,* 128 id. 229; *People* v. *Cooper,* 83 id. 585; *Hinze* v. *People,* 92 id. 406; 23 Am. & Eng. Ency. of Law, pp. 225-227, and notes).

An examination of the Pharmacy act, as amended and in force on July 1, 1895, will show, that it had in view the accomplishment of two objects. One of these is to prohibit the compounding of medicines and the sale of the same, as thus compounded, unless such compounding and sale shall be made by a registered pharmacist. The other object is to prohibit the sale of patent and proprietary medicines and domestic remedies by any other person than a registered pharmacist. One case, contemplated by the statute, is where the druggist, or other person, puts up prescriptions, or compounds medicines, and then sells them, while the other case, contemplated by the statute, is the sale of patent and proprietary medicines and domestic remedies without the compounding and putting up of the same by the person selling them. The distinction thus indicated is clearly shown in sections 2, 8 and 14 of the act. While, therefore, we hold the act to be invalid in the respect already pointed out, we yet hold it to be valid, so far as it applies to persons retailing, compounding or dispensing drugs, medicines or poisons where the person so retailing has, at the same time, put up or prepared or compounded the drugs or medicines, so sold by him.

For the reasons above indicated, we are of the opinion, that the trial court erred in refusing to hold as law the propositions of law, submitted to it by the appellant

upon the trial below. Accordingly, the judgment of the criminal court of Cook county is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE WILKIN, dissenting.