THE PEOPLE, for use of State Board of Health, Appellant, *vs.* J. A. WILSON, Appellee.

*Opinion filed February 25, 1911.*

1. CONSTITUTIONAL LAW—*power of the legislature to enact police measures is limited.* The exercise of the police power by the legislature is limited to such measures as are designed to promote the public health, morals, safety or welfare, and when it can be seen from the provisions of a statute that it has no such tendency the court will declare it invalid when it is called in question.

2. SAME—*"itinerant vendor" provision of Medicine and Surgery act not a proper police measure.* The provision of section 8 of the Medicine and Surgery act, (Hurd's Stat. 1909, chap. 91, par. 12,) that itinerant vendors of drugs, nostrums, etc., must obtain a license from the State Board of Health, is not, as applied to itinerant vendors of patent or proprietary medicines, of any benefit to the public health, since no special knowledge is required to sell such medicines and no qualification other than the payment of the license fee is required by the statute.

3. SAME—*effect of "itinerant vendor" provision of the Medicine and Surgery act.* The practical effect of the "itinerant vendor" provision of section 8 of the Medicine and Surgery act, so far as patent or proprietary medicines are concerned, is to give druggists a monopoly of the sale of such medicines, as the license fee required to be paid by itinerant vendors is so high that it practically prohibits them from engaging in such business.

4. SAME—*a license fee must not be so exorbitant as to create a monopoly.* If the legislature, under the guise of regulating a legitimate business, fixes a license fee at so exorbitant an amount as to practically prohibit the business generally and create a monopoly thereof by a favored class, the court may declare the statute invalid, as depriving citizens of liberty and property to which they are entitled under the constitution.

5. SAME—*the "itinerant vendor" provision of the Medicine and Surgery act is unconstitutional as respects patent medicines.* The "itinerant vendor" provision of section 8 of the Medicine and Surgery act, in so far as it applies to an itinerant vendor of patent and proprietary medicines and requires him to pay a license fee of $100 per month to the State Board of Health, is unconstitutional, but the invalidity of such provision does not affect the remaining portion of the act. (*Noel* v. *People,* 187 Ill. 587, followed.)

COOKE and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Kankakee county; the Hon. FRANK L. HOOPER, Judge, presiding.

This was an action of debt commenced in the name of the People, for the use of the State Board of Health, against J. A. Wilson, before a justice of the peace in Kankakee county, for the violation of paragraph 12 of chapter 91, (Hurd's Stat. 1909, p. 1474,) which reads as follows: "That any itinerant vendor of any drug, nostrum, ointment or appliance of any kind intended for the treatment of diseases or injury, who shall, by writing or printing, or any other method, profess to the public to cure or treat disease or deformity by any drug, nostrum or application, shall pay a license of one hundred dollars ($100) per month into the treasury of the board, to be collected by the board in the name of the People of the State of Illinois, for the use of said board. And it shall be lawful for the State Board of Health to issue such license on application made to said board, said license to be signed by the president of the board and attested by the secretary with the seal of the board; but said board may, for sufficient cause, refuse said license. And such itinerant vendor who shall, by writing or printing, or any other method, profess to cure or treat disease or deformity by any drug, nostrum or appliance without a license so to do, shall be deemed guilty of a violation of this section, and upon conviction shall be subject to the penalties hereinafter provided." Subsequent sections of the act provide that in case of conviction the offender shall be fined in the sum of $100 for the first offense and $200 for each subsequent offense and stand committed to the county jail until the fine and costs are paid. The defendant was acquitted before the justice of the peace and the People took an appeal to the circuit court, where, at the close of the evidence, the court instructed the jury to return a verdict in favor of the defendant on the ground that said paragraph of the Medical and Surgery act was uncon-

stitutional and void, and the People have prosecuted a further appeal to this court.

It appears from the evidence that the appellee was engaged in selling from a wagon, in Kankakee county, a patent or proprietary liniment, called "Porter's Pain King," recommended for colds, headaches, bruises, burns, cramps, neuralgia, etc., manufactured by the George N. Rundle Company, at Piqua, Ohio. This liniment was put up in bottles, each bottle being wrapped in printed matter and sealed in a pasteboard package, and was sold in the original package. The evidence showed one sale to Charles H. Thurston.

W. H. STEAD, Attorney General, and J. BERT. MILLER, State's Attorney, (JUNE C. SMITH, and CHARLES E. WOODWARD, of counsel,) for appellant:

The regulation of the sale of drugs and nostrums by itinerant vendors falls clearly within the purpose of the Medical Practice act, as expressed in its title. *People* v. *Blue Mountain Joe,* 129 Ill. 370.

Section 8 of the Medical Practice act is not unconstitutional because of the clause, "but said board may, for sufficient cause, refuse said license." *Gundling* v. *Chicago,* 176 Ill. 340; 177 U. S. 183; *People* v. *Dental Examiners,* 110 Ill. 180; *People* v. *McCoy,* 125 id. 289; *Kettles* v. *People,* 221 id. 221; *Block* v. *Chicago,* 239 id. 251; *Harrison* v. *People,* 222 id. 150; *Spiegler* v. *Chicago,* 216 id. 114; *People* v. *Cregier,* 138 id. 301; *Donahue* v. *County of Will,* 100 id. 94; *Rects* v. *Michigan,* 188 U. S. 505; *New York* v. *Van de Carr,* 199 id. 552.

Although said clause, "but said board may, for sufficient cause, refuse said license," may be unconstitutional, it is so distinct and separable from the balance of the section that the latter may stand though the former becomes of no effect and although said unconstitutional clause is contained

in the same section. *Railroad Co.* v. *Jones,* 149 Ill. 361; *Williams* v. *People,* 121 id. 84; *Ritchie* v. *People,* 155 id. 98; *Noel* v. *People,* 187 id. 587.

WHITLEY & FITZGERALD, (JOHN A. BARNES, of counsel,) for appellee:

Section 8 of chapter 91 of the Revised Statutes is unconstitutional. *People* v. *Smith,* 208 Ill. 31; *People* v. *Noel,* 187 id. 587; *Saddler* v. *People,* 188 id. 243.

Said section delegates a legislative function to the State Board of Health, giving it the right to grant or refuse a license, at its volition. *Noel* v. *People,* 187 Ill. 587; *Saddler* v. *People,* 188 id. 243; *People* v. *Chase,* 165 id. 527; *Creote* v. *Chicago,* 56 id. 422; *Price* v. *People,* 193 id. 114; *Chicago* v. *Netcher,* 183 id. 104; *Aurora* v. *Schoeberlein,* 230 id. 496; *Railroad Co.* v. *People,* 212 id. 551; *People* v. *Edgar County,* 233 id. 187; *Rouse* v. *Thompson,* 228 id. 522; *People* v. *Election Comrs.* 221 id. 9; *Railroad Co.* v. *Jones,* 149 id. 361.

The license fee provided by section 8 is exorbitant and excessive. *Ex parte Young,* 209 U. S. 123; *Banta* v. *Chicago,* 172 Ill. 204.

Said section 8 violates the clause of the constitution providing that "all penalties shall be proportionate to the offense." Const. 1870, art. 2, sec. 11; *Railroad Co.* v. *People,* 67 Ill. 11.

Said enactment violates the constitutional right of the citizen to pursue a lawful occupation, without providing any qualifications in those who do pursue the same occupation. *Eden* v. *People,* 161 Ill. 296; *Bessette* v. *People,* 193 id. 334; *People* v. *Smith,* 208 id. 31; *People* v. *Lehr,* 196 id. 361; *Matthews* v. *People,* 202 id. 403; *McChesney* v. *People,* 200 id. 150; *State* v. *Montgomery,* 94 Me. 192.

Said act violates section 13 of article 4 of our State constitution, that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the

title." *Rouse* v. *Thompson,* 228 Ill. 522; *Kennedy* v. *Le-Moyne,* 188 id. 259; *Allardt* v. *People,* 197 id. 509; 26 Am. & Eng. Ency. of Law, (2d ed.) 579.

Section 8 of chapter 91 was repealed by sections 1 and 14*a* of the Pharmacy act, as amended in 1908. Hurd's Stat. 1908, p. 1407; *People* v. *Zito,* 237 Ill. 434.

If the Pharmacy act does not repeal section 8 of the Medicine act they must be construed as laws *in pari materia* and read together. Construe these two statutes together and appellee has violated no law. *People* v. *Thornton,* 186 Ill. 172; *Andrews* v. *People,* 75 id. 605; *People* v. *Board of Education,* 166 id. 388.

Sales of proprietary or patent medicines in original, unbroken packages are excluded from the operation of the Pharmacy act, and, by implication and construction of the two statutes, are excluded from the operation of section 8. Hurd's Stat. 1908, p. 1409; *People* v. *Zito,* 237 Ill. 434.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that paragraph 12 of the Medical and Surgery act is a valid police regulation. It is undoubtedly true that the legislature has the right, under the police power, to pass enactments for the benefit and protection of the public health, but it is equally well settled that the exercise of the police power is limited to such measures as are designed to promote the public health, the public morals, the public safety or the public welfare. When it can be seen from the provisions of a statute that it has no tendency to promote the public health, safety, morals or welfare, the courts will, when such a statute is called in question before them, hold it invalid. (*City of Chicago* v. *Netcher,* 183 Ill. 104.) In this State, at the present time, all persons other than an itinerant vendor have the right to vend patent or proprietary medicines, and an itinerant vendor may obtain that right upon the payment of a monthly license fee of

$100. On obtaining a license as such itinerant vendor from the State Board of Health, no qualifications other than the payment of such license fee and the receipt of the license are necessary to authorize such itinerant vendor to vend such medicines. As a prerequisite to obtaining a license the statute does not require an itinerant vendor to have any knowledge of the patent or proprietary medicine which he is seeking to sell, and after he has obtained a license it does not require of him that he make any analysis, inspection or examination of the medicine he proposes to sell. We are unable to see how the public health is in any way protected by limiting such sales, when made by an itinerant vendor, to an itinerant vendor who has a license, who has no knowledge of what he sells or makes no examination of what he sells. It is a matter of common knowledge that patent or proprietary medicines are prepared, put up and marked and ready for use by the public so soon as they leave the hands of the manufacturer. They are in packages or bottles, are labeled with the name, and are accompanied with wrappers containing directions for their use and the conditions for which they are claimed to be specifics, and there is nothing that calls into use any skill or science on the part of one who sells them and one man can do it just as well as another, and the man who buys is just as well protected when he purchases from a druggist, a groceryman or an unlicensed itinerant vendor as he would be if he purchased from an itinerant vendor who had paid a license fee of $100 per month for the privilege of making a sale. It is also a matter of common knowledge that practically all patent or proprietary medicines that are sold in the cities and towns of the State are sold by persons who are engaged in conducting drug stores. The only effect, therefore, of the statute, if it is a valid statute, is to give the druggists and the licensed itinerant vendors a monopoly of the business of selling patent or proprietary medicines without in any way affording any additional protection to the health of the

public.   We think, however, the license fee in this case
is so high as to be prohibitive upon the itinerant vendor,
(which feature of the statute we will consider later,) and
that the practical operation of this statute must be to give
the druggists of the State a monopoly of the business of
selling patent and proprietary medicines without in any way
conserving the health of the public, which was the ground
upon which a similar statute was held invalid in *Noel* v.
*People,* 187 Ill. 587.   In that case a statute had been passed
which authorized sales of patent and proprietary medicines
to be made only by registered pharmacists, and this court
held that the act was not a valid exercise of the police
power of the State.   In *City of Chicago* · v. *Netcher, supra,*
the court had before it an ordinance making it unlawful
for any. person, firm or corporation engaged in selling "dry
goods, clothing, jewelry and drugs   *   *   *   to have ex-
posed for sale, or sell to any person, firm or corporation,
any meats, fish, butter, cheese, lard, vegetables or any other
provisions."   It was held that the ordinance was not a po-
lice regulation but was purely an arbitrary prohibition, and
was void as an unlawful interference with property rights
granted by the State and Federal constitutions.   On page
111 the court said:   "In order to sustain legislative inter-
ference with the business of the citizen by virtue of the
police power it is necessary that the act should have some
reasonable relation to the subjects included in such power.
If it is claimed that the statute or ordinance is referable to
the police power, the court must be able to see that it tends,
in some degree, toward the prevention of offenses or the
preservation of the public health, morals, safety or welfare.
It must be apparent that some such end is the one actually
intended and that there is some connection between the pro-
visions of the law and such purpose.   If it is manifest that
the statute or ordinance has no such object, but, under the
guise of a police regulation, is an invasion of the property

rights of the individual, it is the duty of the court to declare it void."

It has often been held that if the legislature, under the guise of regulation, fixes a license fee at so exorbitant an amount as to operate as a prohibition upon the business or calling sought to be regulated and thereby to create a monopoly, the effect would be to deprive the citizen of his liberty and of his property under the constitution, and that it would be within the power of the courts to declare such a statute invalid. (*City of Carrollton* v. *Bazzette,* 159 Ill. 284; *Price* v. *People,* 193 id. 114; *Spiegler* v. *City of Chicago,* 216 id. 114.) While it is no objection to a tax imposed under the police power that it may incidentally yield a revenue, still the tax cannot be made so heavy on a legitimate occupation as to create a monopoly, or, in effect, prohibit the pursuit of the occupation. (*Waters-Pierce Oil Co.* v. *Hot Springs,* 85 Ark. 509; *City Council of Montgomery* v. *Kelly,* 142 Ala. 552; *Americus* v. *Verner,* 63 S. E. Rep. 347; *Standard Oil Co.* v. *Commonwealth,* 82 S. W. Rep. 1020; *State* v. *Hanson,* 16 N. Dak. 347; *Cache County* v. *Jensen,* 21 Utah, 207; *Garfinkle* v. *Sullivan,* 37 Wash. 650.) In this case the statute fixes the license fee to be paid by an itinerant vendor of patent and proprietary medicines at $100 per month, or $1200 per annum. It would seem it would occur to any fair-minded man, at a glance, that the fee of $100 per month is so excessive that no itinerant vendor of patent and proprietary medicines could afford to pay such license, and that the license fee so imposed would prohibit any person from vending such medicines except he had a drug store or other fixed place of business. In the *Noel case* a statute was held void which attempted to prohibit any person other than a registered pharmacist from vending patent and proprietary medicines, on the ground that it created a monopoly. If the reasoning of that case is sound,—and we have no doubt it is,—we think that a valid statute cannot be passed which accomplishes by

indirection what it was held in that case could not be accomplished directly,—that is, instead of providing in direct terms by a statute that no person other than a druggist shall vend patent and proprietary medicines, pass a statute which imposes so high a license fee for the vending of patent and proprietary medicines that no itinerant vendor can afford to take out a license, the practical operation of which would be to give the druggists of the State a monopoly of that business.

From a careful examination of the record we are satisfied the paragraph of the statute in question, as applied to an itinerant vendor of patent and proprietary medicines, (which was the business in which appellee was engaged,) is unconstitutional. We are of the opinion, however, that the holding of that paragraph unconstitutional as to itinerant vendors of patent and proprietary medicines does not affect the validity of the remainder of the statute.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

COOKE and DUNN, JJ., dissenting:

We do not concur in the majority opinion. The judgment of the circuit court should be reversed. Appellee attacked the constitutionality of section 8 of the Medical Practice act, referred to in the majority opinion as paragraph 12, upon several grounds, all of which have not been noted. He also insisted if the section is constitutional it has been repealed by the Pharmacy act. We are of the opinion that the section is constitutional and has not been repealed by implication. This statute is designed to protect the public health and is a proper exercise of the police power of the State. The practice of medicine, which includes the itinerant vending of drugs and nostrums, is subject to legislative regulation and control. In *People v. Blue Mountain Joe,* 129 Ill. 370, this court passed upon the question whether or not sections substantially the same as the present

sections 8 and 9 of the Medical Practice act were invalid for the reason that the title of the act was not broad enough to include the provisions of those sections. The title of the act was then, as it is now, "An act to regulate the practice of medicine in the State of Illinois and to repeal an act therein named," and it was held in that case that the regulation of the sale of drugs and nostrums by itinerant vendors clearly fell within the purpose of the act as expressed in its title. Section 8 provides that any itinerant vendor of any drug, nostrum, ointment or appliance of any kind intended for the treatment of disease or injury, who shall, by writing or printing, or any other method, profess to the public to cure or treat disease or deformity by any drug, nostrum or application, shall secure a license before so doing; and the majority holds that this is not a valid exercise of the police power of the State for the reason that there can be no distinction between itinerant vendors of such drugs and such persons as have an established place of business and sell them at their permanent places of business. This is based upon the assumption that itinerant vendors of drugs, nostrums, ointments and appliances intended for the treatment of disease or injury fall within the same class as vendors of the same preparations and appliances who have fixed and permanent places of business. This assumption is without foundation. A merchant with a permanent place of business deals, as a rule, with his regular customers and sells his wares to such as come to him to buy. He is not a stranger in the community, and his character, reliability and reputation are known. He has a business reputation to maintain and has a fixed abiding place at which he may be found. An itinerant vendor, on the other hand, is not bound by any rules which govern the local merchant. He may be an entire stranger to every member of the community in which he plies his trade. He has no business reputation to sustain. He is bound by no restraint in the representations he may make as to the par-

ticular drug or nostrum he offers for sale. He is here to-day and to-morrow is gone, perhaps never to be heard of again. The local dealer and the itinerant vendor of drugs and nostrums are of separate and distinct classes. To regulate the practice of medicine is clearly within the police power of the State, and to discriminate between peddlers or itinerant vendors of medicinal preparations and local dealers of the same preparations is not an abuse of that power. The local dealer, with his business reputation to sustain, is much less liable to deal in drugs or nostrums of questionable quality and efficacy than the itinerant vendor, and is also less liable to make misrepresentations in reference to the diseases and ailments for which the drug sold is a specific.

The facts in this case disclose that Porter's Pain King was represented to be the best known remedy for almost every disease or ailment known to science of which man, beast or fowl may be afflicted, and specific directions were given for both external and internal use for all such ailments, and satisfaction guaranteed. To say that the legislature may not restrict such men as appellee in plying their trade is to deprive the State of one of its most important powers. The majority opinion states that the vendor, on obtaining a license from the State Board of Health, is required to show no qualification whatever, and that whether he secures the license depends alone upon his ability to pay the fee. The act provides that the board may, for sufficient cause, refuse any such license. This provision does not give the board the arbitrary power, in its discretion, to refuse to issue a license in any case, but it does invest it with a proper and reasonable discretion, to be exercised to safeguard the public health, in granting or refusing a license.

It is pointed out that the license provided for by these two sections of the statute is so high as to be prohibitive upon the itinerant vendor of drugs and nostrums. This

may or may not be true; but, conceding it to be true, the legislature, in the view we take, has the undoubted right to prohibit absolutely the sale of drugs and nostrums by itinerant vendors, and, that being true, it does not exceed its powers by fixing a license fee at such a sum as to be prohibitive.