PEOPLE *v.* RAWLEY.

1. STATUTES—FEE EXACTED FOR LICENSE MAY NOT BE SUSTAINED AS SPECIFIC TAX.

The exaction under Act No. 294, Pub. Acts 1913, providing for the licensing and regulating the business of transient merchants, may not be sustained as a vocational or specific tax, the legislature having no power to impose a specific tax under the guise of licensing or regulating.[1]

2. SAME—ACT EXACTING EXCESSIVE LICENSE FEE MUST FALL.

If the exaction provided in a regulatory or licensing act is so clearly beyond the amount needed for regulation as to amount to taxation under the guise of regulation, or if so excessive as without reason to operate in restraint of trade and amount to prohibition of the conduct of a lawful business, the act must fall.[2]

3. SAME—CONSTITUTIONAL LAW—STATUTE PRESUMED VALID.

While the court, in approaching the question, will presume, in reviewing a licensing act, that it is valid and that the fee exacted is reasonable in amount and necessary for the proper regulation of the business, said presumption is not a conclusive one.[3]

4. LICENSES—ACT EXACTING EXCESSIVE LICENSE FEE VOID.

A license fee in excess of $3,000 a year provided for by Act No. 294, Pub. Acts 1913, and applying to all kinds of lawful business conducted by transient merchants, is upon its face so out of proportion to the expense of regulation of a lawful business, so unreasonable, so excessive, that the act must fall.[4]

Exceptions before judgment from Genesee; Brennan (Fred W.), J. Submitted April 16, 1925. (Docket No. 113.) Decided June 18, 1925.

Dick Rawley was convicted of violating the tran-

---

[1]Licenses, 37 C. J. § 34; [2]Id., 37 C. J. §§ 37, 41, 42; [3]Id., 37 C. J. §§ 36, 45; [4]Id., 37 C. J. § 42.

On validity of license or occupation tax on hawkers and peddlers and persons engaged in soliciting orders by sample or otherwise, see notes in 19 L. R. A. (N. S.) 301; 28 L. R. A. (N. S.) 265; 35 L. R. A. (N. S.) 1074.

sient merchant act (2 Comp. Laws 1915, § 7001 *et seq.*).    Reversed, and defendant discharged.

*Neithercut & Neithercut*, for appellant.

*Andrew B. Dougherty*, Attorney General, and *William R. Roberts*, Prosecuting Attorney, for the people.

FELLOWS, J.    Defendant took out a license under Act No. 85, Pub. Acts 1923.    He erected a tent on a vacant lot in Flint and there sold the articles enumerated in the act.    He also sold some confectionery.    He did not pay the license fee provided for in Act No. 294, Pub. Acts 1913 (2 Comp. Laws 1915, § 7001 *et seq.*), which in Flint would amount to $20 a day for the first five days and $10 a day thereafter. He was convicted of a violation of the last named act and reviews his conviction on exceptions before sentence.    We need not determine whether the provisions of section 6 of the act of 1923 exempts payment of a license fee under the act of 1913 for the sale of articles covered by the act of 1923, because the sale of candy was not authorized by the license issued under the act of 1923, and it, therefore, becomes necessary to determine defendant's contention that the act of 1913 imposes an unreasonable, unjustified and excessive fee upon the business conducted by him and for that reason the act is invalid.

The exaction can not be sustained as a vocational tax, a specific tax; it does not purport to be such and *Vernor.* v. *Secretary of State*, 179 Mich. 157 (Ann. Cas. 1915D, 128), must be taken as settling adversely the right of the legislature to provide for the specific tax in an act whose title is similar to the one before us.    The act must stand or fall as the exercise of the police power of the State, as a regulatory measure. If the exaction is so clearly beyond the amount needed for regulation as to amount to taxation under the

guise of regulation, or if so excessive as without reason to operate in restraint of trade and amounts to prohibition of the conduct of a lawful business, the act must fall. We approach the question with the presumption that the act is valid, that the fee exacted is reasonable in amount and necessary for the proper regulation of the business. But this presumption is not a conclusive one. In the *Vernor Case* it was said:

"Such a measure will be upheld by the courts when plainly intended as a police regulation, and the revenue derived therefrom is not disproportionate to the cost of issuing the license, and the regulation of the business to which it applies."

The act applies to all kinds of legitimate business conducted by transient merchants. It exacts a fee of over $3,000 a year. The service performed on behalf of the municipality consists of receiving the application and the issuance of the license by the clerk and receiving the money and accounting for it by him. The act provides for no policing or police regulation. Numerous cases have been before this and other courts involving licensing by municipalities and by the State itself, and while a considerable proportion of the cases involve municipal ordinances enacted under delegated authority which must be strictly construed, the underlying principles governing them must be the same. We shall first consider some of our own cases. In *People* v. *Russell*, 49 Mich. 617 (43 Am. Rep. 478), a license fee of $3 a day or $15 a year for hawkers and peddlers was sustained; in *City of Grand Rapids* v. *Braudy*, 105 Mich. 670 (32 L. R. A. 116, 55 Am. St. Rep. 472), an annual fee of $50 for pawnbrokers and $25 a year for junk dealers was sustained; in *City of Grand Rapids* v. *Norman*, 110 Mich. 544, where the original ordinance imposed upon hawkers and peddlers a license fee of not to exceed

$15 a day but the common council had fixed the fee at $30 a year, the ordinance was sustained; in *People* v. *Baker*, 115 Mich. 199, a license fee of $5 a week for hawkers and peddlers was held not to be unreasonable; for the same business $10 a week and $50 a year was held not to be so excessive as to render the ordinance void in *City of Muskegon* v. *Zeeryp*, 134 Mich. 181; in *People* v. *Grant*, 157 Mich. 24 (133 Am. St. Rep. 329), a license fee of $2 a day, $10 a week, $25 a month and $50 for three months for a transient trader was sustained; in *O'Hara* v. *Collier*, 173 Mich. 611 (Ann. Cas. 1914D, 936), a fee of $4 a day and $100 a year for peddling flour and other cereal products where the business was extensive, was sustained; and in *People* v. *Brazee*, 183 Mich. 259 (affirmed by United States Supreme Court in *Brazee* v. *Michigan*, 241 U. S. 340 [36 Sup. Ct. 561, Ann. Cas. 1917C, 522]), a license fee of $100 in cities of over 200,000 inhabitants for license to conduct an employment bureau was sustained.

In *Chaddock* v. *Day*, 75 Mich. 527 (4 L. R. A. 809, 13 Am. St. Rep. 468), an ordinance requiring payment of $10 a month for a license to peddle meat in quantities less than one-quarter of an animal was held invalid and it was said by Mr. Justice MORSE, speaking for the court:

"It is quite common in these latter days for certain classes of citizens—those engaged in this or that business—to appeal to the government—national, State, or municipal—to aid them by legislation against another class of citizens engaged in the same business, but in some other way. This class legislation, when indulged in, seldom benefits the general public, but nearly always aids the few for whose benefit it is enacted, not only at the expense of the few against whom it is ostensibly directed, but also at the expense and to the detriment of the many, for whose benefit all legislation should be, in a republican form of government, framed and devised. This kind of legis-

lation should receive no encouragement at the hands of the courts, and be only upheld when it is strictly within the legitimate power of congress, or the State or municipal legislatures."

In *Brooks* v. *Mangan*, 86 Mich. 576 (24 Am. St. Rep. 137), it was said:

"The ordinance required every person soliciting a license as a hawker or peddler to pay $10 for the first day, and $5 for each subsequent day, if he traveled on foot; if he traveled with one horse, $20 for the first day, and $15 for each subsequent day; if he traveled with two or more horses, $25 for the first day, and $15 for each subsequent day. We think the ordinance invalid on account of its unreasonableness. Practically, if enforced, it would amount to a prohibition of the business."

In *City of Saginaw* v. *Saginaw Circuit Judge*, 106 Mich. 32, an ordinance requiring a license fee of $10 a day by transient dealers, and which was not applicable to residents of the city, was by reason of such classification held invalid, and without deciding the question, the reasonableness of the fee was questioned; in *Brown* v. *Judge of Superior Court*, 145 Mich. 413, a similar act to the one before us (Act No. 214, Pub. Acts 1905), was by reason of a provision contained in it permitting the municipal authorities to waive it in any particular case held invalid; and in *Kenaston* v. *Riker*, 146 Mich. 163, a license fee of $500 annually on the business of running a restaurant was held to be excessive. Other cases from this court might be cited but we have called attention to sufficient of our own cases to illustrate the holdings of this court.

We shall now consider the holdings in other jurisdictions. *State* v. *Foster*, 22 R. I. 163 (46 Atl. 833, 50 L. R. A. 339), cited by the prosecution, is the strongest case for the people which has been cited to us or which we have been able to find in the time at our disposal. The opinion is exhaustive and deals at length with the subject. It will be noted, how-

ever, that the court says that it reaches the conclusion it does with "considerable hesitation." The State license fee was $200, and a local fee of $100 for towns less than 15,000, and $350 for towns over 15,000. In *State* v. *Harrington,* 68 Vt. 622 (35 Atl. 515, 34 L. R. A. 100), the act was similar to Act No. 191, Pub. Acts 1901 (2 Comp. Laws 1915, § 6984 *et seq.*), and the present question was not directly involved. The attitude of the courts in approaching the question is thus stated in *Muhlenbrinck* v. *Commissioners,* 42 N. J. Law, 364 (36 Am. Rep. 518) :

"It may not be easy, in every case, to determine with precision, from the amount of the fee charged, whether it is intended as a regulation or a tax, and all reasonable intendment should be in favor of its fairness and justness as a fee."

In that case the ordinance was held invalid. A comparatively recent case, *People* v. *Wilson,* 249 Ill. 195 (94 N. E. 141, 35 L. R. A. [N. S.] 1074), had before it a licensing act applying to itinerant vendors of patent and proprietary medicines. We cite it only to the point that the license there involved was held to be so excessive as to be prohibitive and rendering the act invalid. It was there said:

"In this case the statute fixes the license fee to be paid by an itinerant vendor of patent and proprietary medicines at $100 per month, or $1,200 per annum. It would seem it would occur to any fair-minded man, at a glance, that the fee of $100 per month is so excessive that no itinerant vendor of patent and proprietary medicines could afford to pay such license, and that the license fee so imposed would prohibit any person from vending such medicines except he had a drug store or other fixed place of business. In the *Noel Case* (187 Ill. 587 [58 N. E. 616]) a statute was held void which attempted to prohibit any person other than a registered pharmacist from vending patent and proprietary medicines, on the ground that it created a monopoly. If the reasoning of that case is sound,—and we have no doubt it is,—we think that

a valid statute cannot be passed which accomplishes by indirection what it was held in that case should not be accomplished directly,—that is, instead of providing in direct terms by a statute that no person other than a druggist shall vend patent and proprietary medicines, pass a statute which imposes so high a license fee for the vending of patent and proprietary medicines that no itinerant vendor can afford to take out a license, the practical operation of which would be to give the druggists of the State a monopoly of that business."

In *Caldwell* v. *City of Lincoln,* 19 Neb. 569 (27 N. W. 647), a license fee was exacted of auctioneers of $12 a day, and not to be issued for less than 10 days. It was held to be excessive and the ordinance invalid; in *Sipe* v. *Murphy,* 49 Ohio St. 536, a license fee of $25 a day for auctioneers was held to be excessive; an annual license fee of $500 on the occupation of railway ticket broker, "scalper," or dealer was held to be excessive in *Hirshfield* v. *City of Dallas,* 29 Tex. App. 242 (15 S. W. 124); a license fee of $50 a year on coal oil wagons was held to be excessive in *Waters-Pierce Oil Co.* v. *Hot Springs,* 85 Ark. 509 (109 S. W. 293, 16 L. R. A. [N. S.] 1035); in *City Council of Montgomery* v. *Kelly,* 142 Ala. 552 (38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43), a license fee of $100 annually on merchants issuing trading stamps was held invalid; in *City of Ottumwa* v. *Zekind,* 95 Iowa, 622 (64 N. W. 646, 29 L. R. A. 734, 58 Am. St. Rep. 447), a license fee of $25 a day on transient merchants was held to be invalid; in *City of Mankato* v. *Fowler,* 32 Minn. 364 (20 N. W. 361), a license fee of $300 for auctioneers was held to be excessive; in *Vansant* v. *Harlam Stage Co.,* 59 Md. 330, a license fee of $75 was exacted for operating omnibuses; it was said by the court:

"But we have no need to resort to comparisons to enable us to determine the invalidity of so much of the ordinance of 28th April, 1882, as relates to pas-

senger omnibuses. If there were no other subjects except the omnibuses mentioned therein, the amount attempted to be levied upon these omnibuses shows clearly upon its face that it was an attempt on the part of the city authorities to exercise the power of taxation which had not been granted them by the State."

See, also, *State* v. *Blaser,* 36 La. Ann. 363; *City of Carrollton* v *Bazzette,* 159 Ill. 284 (42 N. E. 837, 31 L. R. A. 522) ; *City of Peoria* v. *Gugenheim,* 61 Ill. App. 374; *Town of State Center* v. *Barenstein,* 66 Iowa, 249 (23 N. W. 652) ; *Mayor, etc., of Americus* v. *Berner,* 131 Ga. 802 (63 S. E. 347).

As we have pointed out, the license fee exacted under this statute exceeds $3,000 a year; this fee is levied under the guise of the police power for regulation. We have been unable to find any case which sustains the imposition of such a fee for regulation, for licensing alone. While a wide latitude must be given legislative discretion, and courts will not calculate to a nicety the exact expense of issuing licenses, there comes a point where the exaction is so palpably, so grossly excessive, that courts can not close their eyes to the fact that such legislation is either taxation under the guise of regulation, or enacted in restraint of trade and for the purpose of prohibiting the conduct of the business. The act applies to all transient merchants, both large and small dealers, and lays its hand upon all lawful business conducted by the class named. The exaction is upon its face so out of proportion to the expense of regulation of a lawful business, so unreasonable, so excessive that the act must fall.

The conviction will be reversed and the defendant discharged.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.