(October Term, 1943)

UNEMPLOYMENT COMPENSATION COMMISSION OF WYOMING, Plaintiff,

v.

HOMER RENNER AND WILLARD LESTER, A CO-PARTNERSHIP, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF RENNER SAW MILL, Defendants.

(No. 2261; Nov. 16, 1943; 143 Pac. 2d 181)

438

439

440

441

BLUME, Justice.　OPINION

The Unemployment Compensation Commission of this State recovered a judgment in the Justice Court in Big Horn County, Wyoming, against Homer Renner and Willard Lester, copartners, operating under the name of Renner Saw Mill, for the sum of $93.23 on account of payments due from the appellants under Chapter 113, Session Laws of 1937, amended by Chapter 58 of the Session Laws of 1943, known as the Unemployment Compensation Law. The defendants in the case, called appellants herein, took an appeal to the District Court of Big Horn County, Wyoming, and that Court has submitted to us for answer constitutional questions arising in the case, namely, whether the legislative act in question is in violation of the following constitutional provisions, to-wit:

1.  Section 27, Article III: "The legislature shall not pass local or special laws in any of the following enu-

merated cases, that is to say, * * * for the assessment or collection of taxes * * * in all other cases where a general law can be made applicable no special law shall be enacted."

2. Section 34, Article I: "All laws of a general nature shall have a uniform operation."

3. Section 28, Article I: "* * * All taxation shall be equal and uniform."

4. Section 32, Article I: "Private property shall not be taken for private use * * * nor in any case without due compensation."

5. Section 33, Article I: "Private property shall not be taken or damaged for public or private use without just compensation."

6. Section 6, Article XVI: "Neither the State, nor any county, city, township, town, school district, or any other political subdivision, shall loan or give its credit, or make donations to, or in aid of any individual, association or corporation, except for necessary support of the poor * * *."

The statute in question is long and is similar to many unemployment compensation acts in other states. The details thereof need not be set out and a general outline will suffice. Its purpose is to provide compensation for employees during involuntary unemployment. The amount of payments range from $7.00 to $20.00 per week, depending on the amount which the workmen have previously earned. The benefit is confined to unemployed workmen who register for work, are able to work, are available for work, and have been employed for a certain length of time previous to the time of making claim for payment. Other limitations are mentioned in the statute. In order to raise a fund from which these payments may be made, the statute imposes a charge or tax upon the total payroll of the respective employers in this state, excepting from the

statute, however, payments made by employers of agricultural, ranch or dude ranch labor, domestic service, public service, service for charitable purpose, and "service performed by an individual in the employ of his son, daughter, or spouse, and service performed by a child under the age of 21 in the employ of his father or mother." The Unemployment Compensation Commission, provided in the statute, is required to keep a separate account for each employer. Employers are divided into seven classes and the rate of contribution to the fund depends upon the status of their account and the amount which has been drawn against it by reason of payments made to former employees, the rate of payment varying from one-half of 1% to 3.6% of the total payroll of the respective employer, the standard rate being 2.7%. The fund created by the contributions is a separate fund held by the State Treasurer, separate and apart from the public funds of the state, and is to be used solely for the purpose of meeting the payments to be made to unemployed workmen.

I. The first question to be answered herein is as to whether or not the statute in question is a special or a general law, in controvention of Section 27 of Article III of the Constitution which provides that in all cases where a general law can be made applicable, no special law shall be enacted and the legislature shall not pass special laws for the assessment or collection of taxes. We think that the decisions of this Court dispose of this question. It was stated in Standard Cattle Company v. Baird, 8 Wyo. 144, 157, that "a law framed in general terms, restricted to no locality, and operating equally upon all of a group of objects, which having regard to the purpose of the legislature are distinguished by characteristics sufficiently marked and important to make them a class by themselves, is not a special or local law, but a general law." In McGarvey

v. Swan, 17 Wyo. 120, 96 Pac. 697, the court quoted with approval the following, namely, "a general law, as distinguished from a local or special law, is one that embraces a class of subjects, and does not exclude any subject or place naturally belonging to the class, when considered in its relation to the subject of classification." Again the Court stated in the same case that "whether a particular statute is or is not a general law is often a question difficult of determination, but the general rules controlling such determination are quite well established. That a reasonable classification of objects of legislation or localities may be resorted to without rendering an act objectionable as a local or a special law, within the meaning of the constitutional inhibition of such laws, is a general principle too well settled to admit of present controversy." See also State v. A. H. Read & Co., 33 Wyo. 387, 418, 240 Pac. 208; Public Service Co. v. Grimshaw, 49 Wyo. 158, 185, 53 Pac. 2d 1; State v. Sherman, 18 Wyo. 169, 176, 105 Pac. 299, 27 L. R. A. (N. S.) 898; May v. City of Laramie, 58 Wyo. 240, 256, 131 Pac. 2d 300.

In the case at bar the unemployment compensation act in question embraces a group of objects, or a class of subjects, throughout the state, and is not accordingly, a special law but is a general law unless the exemptions of certain employers mentioned in the statute make the classification unreasonable. In view of the fact that that question also arises in connection with the constitutional provision relating to taxation, certified to this Court, we shall defer the discussion of that point until we reach that subject, but may say in passing that Public Service Commission v. Grimshaw, supra, goes far in holding the classification not to be unreasonable.

II. What we have said is largely applicable to the question as to whether or not the statute in question is violative of Section 34 of Article I of the Constitution

providing that all laws of a general nature shall have a uniform operation. This Court stated in State v. A. H. Read & Co., supra, that that provision of the Constitution is held to be satisfied by a statute applying uniformly within a class of persons, based on a reasonable distinction, or objects of a reasonable class, and operating the same in all parts of the state under the same circumstances. See also 59 C. J. 722. Unless, accordingly, the exemptions of employers mentioned in the act render the classification unreasonable, the section under discussion cannot be said to be violated.

III. We are asked whether the statute in question is contrary to the constitution which provides that "all taxation shall be equal and uniform." That question assumes that the charge imposed upon employers is a "tax". Section 1 of Chapter 113, being the unemployment compensation act, states that the legislative act is passed in pursuance of the police power. We seem, accordingly, to be confronted, to some extent at least, by the question as to what bearing the police and the taxing powers, respectively, have on this case. While courts consider the legislative declaration of the purpose of the act they are not bound thereby. 26 R. C. L. 19; Cooley on Taxation, 4th Ed. Sec. 37. It has been held that if the charges imposed under a statute are primarily in the exercise of the police power, they do not constitute a tax and are not subject to the constitutional limitations upon the power of taxation. 26 R. C. L. 17; 16 C. J. S. 538; Cooley on Taxation, supra, Sec. 29 and 1784. That means—and all that it means is—that in the police power is inherent the power to impose a charge upon the persons and property affected in order to carry the police power, sought to be exerted, into force and effect, and for that purpose is not dependent upon the taxing power. It has its limitations. It has been held that the police power cannot be used for the purpose of exacting revenue. Viquesny v. Kan-

sas City, 305 Mo. 488, 497; 33 Am. Jur. 339. If the charge imposed is in fact a tax, the criteria of which we shall not pause to examine, the legislative act must conform to the limitations upon the taxing power. 26 R. C. L. 17. It has been held in numberless cases that when a charge is imposed under the police power on any business or occupation, which, as in the case at bar, is legitimate and essentially useful and harmless, it must be limited in an amount approximately commensurate with the expenses incident to the enforcement of the power. 33 Am. Jur. 367; Cooley, supra, Vol. 4, pgs. 3510-3514; Gray, Limitation on Taxing Power, Sec. 1445-1453. That rule was recognized in Western Auto Transports v. Cheyenne, 57 Wyo. 351, 373, 118 Pac. 2nd 761, citing a number of cases decided by the Supreme Court of the United States. While these cases deal in the main with charges imposed by municipalities, we take it that the rule is the same when the charge is imposed by the State. People v. Rawley, 231 Mich. 374, 204 N. W. 137, 39 A. L. R. 1381; State v. Osborn, 171 Iowa 678, 154 N. W. 294. Nor would it make any difference what name is given to the charge imposed. These cases deal, so far as we have examined them, with regulation of the business or occupation upon which the charge is imposed, and with the expenses incident thereto and while it may be reasonably held that the police power is properly exerted to relieve the unemployed workmen, there is no attempt under the unemployment compensation act to regulate the employers coming within the scope of the act and no expenses of regulation would therefore be incident to the purpose of the act so far as they are concerned. The unemployment compensation act, similar to ours, has been sustained under the police power in Tatum v. Wheeless, 180 Miss. 800, 178 So. 95; Howes Bros. v. Massachusetts Unemployment Commission, 296 Mass. 275, 5 N. E. 2d 720. These cases did not

discuss the question of equality and uniformity of taxation, nor did they refer to the limitation of the police power above mentioned. They seem to disregard that limitation and proceed on the theory that the legislative department of the government, in mitigation of a public evil, may place the cost on those in connection with whose business the evil arises, relying partially on the cases which have sustained a charge imposed on banks for the purpose of creating a guaranty fund to pay losses caused to depositors by the insolvency of any of such banks. The Massachusetts case also refers to cases which have upheld an imposition on dogs to contribute to a fund for compensation to those whose sheep have been killed or injured by dogs, and to cases upholding a law laying upon fire insurance agents the obligation to contribute to a fund to care for sick and injured firemen. The Mississippi case further takes the view that since employers as a whole are in a dominant position in regard to employment, the legislature has the right to step in and see that their powers are not abused, and provide policies which will prevent unemployment or moderate its evils; further that the benefits to be paid to the unemployed are in the nature of wages, although taken from the employers in the form of an excise tax. The case relies partially on an excerpt from State v. Butler, 297 U. S. 1, 56 Sup. Ct. 312, 80 L. Ed. 407, 102 A. L. R. 914, where the Court, speaking of an expropriation of money from one group for the benefit of another, states as follows: "We may concede that sort of imposition is constitutional when imposed to effectuate regulation of a matter in which both groups are interested and in respect of which there is a power of legislative regulation."

If we inquire into the relation of the rule of these cases to the rule previously stated, namely, that of the limitation of the police power, it seems to be this, that a regulation—using that term in the broad sense—un-

der the police power is not necessarily the regulation of the business or occupation upon which the charge is imposed but may be the regulation of that condition which properly falls within the police power and is so closely connected with the business upon which the charge is imposed as to justify the imposition of the charge upon the latter. In other words, the expense incident to regulation, is the expense to carry into effect the ultimate purpose of the act—in this case, the relief or amelioration of unemployment. If that relationship is true, the rule of these cases is not totally inconsistent with the rule previously mentioned, but is merely a specific application or modification of the latter, thus avoiding an incongruity in our law which is already sufficiently incongruous. In that view of the case, if correct, we could not say that the charges imposed under the statute in question are unreasonable. Employers are divided into seven classes, the amount of contribution depending upon the amount drawn against their account for payments for their unemployed, and the rates are fixed, depending upon whether the amount of the unemployment fund is less than $1\frac{1}{2}$ per cent of the total payroll, or greater than $1\frac{1}{2}$ per cent but less than $2\frac{1}{2}$ per cent, or greater than $2\frac{1}{2}$ per cent. So that it would seem that the statute contemplates that the amount in the fund shall always be approximately sufficient at all times to fulfill the ultimate purpose of the act, but no greater than that. In any event, no evidence in the case shows that the amounts which are to be contributed by employers are greater than the amount which would approximately be commensurate with the expense of enforcing the ultimate purpose of the statute so as to make it unreasonable.

Most of the cases which have held the unemployment compensation act valid as to the employers have so held upon the ground that the charges imposed on

them is valid as a tax. What impresses one as perhaps the most logical is the holding of the Supreme Court of Alabama in Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516, in which the court seemingly expresses the view that the ultimate purpose of the statute is the relief of the unemployed workmen, and that this is properly within the police power of the state, but that the charge imposed upon the employers in order to create the fund to accomplish this purpose is a tax. It has been held a number of times that taxation may be made the implement of the police power. Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U. S. 412, 57 Sup. Ct. 772, 81 L. Ed. 1193, and cases cited; 26 R. C. L. 19. It is largely from that standpoint that the workmen's compensation act of this state, which bears many analogies to the statute in question here, was upheld in Zancanelli v. Coal & Coke Co., 25 Wyo. 511, 173 Pac. 981. See also Mountain Timber Co. v. Washington, 243 U. S. 219, 37 Sup. Ct. 219.

It is proper, accordingly, that we proceed to discuss the question propounded to us as to the uniformity and equality of taxation, considering for the purpose of this discussion that the contributions of the employers are in fact a tax.

It was held in State v. Snyder, 29 Wyo. 199, 221, 212 Pac. 771, that the constitutional provision, that "all taxation shall be equal and uniform," must be construed in connection with Section 11, Article XV of the Constitution which provides that "all property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation." It is generally held that equality and uniformity in taxation applies only to property, not to excise, taxes. 26 R. C. L. 255. And there can be no doubt that the tax in this case should be construed to be an excise tax. Charles C. Steward Machine Co. v. Davis, 301 U. S. 548, 57 Sup. Ct. 883,

81 L. Ed. 1279, 109 A. L. R. 1293. It has been said that even when a constitution is so worded that it is impossible to avoid the conclusion that the requirement that taxes be equal or uniform was intended to apply to excise taxes, it does not apply to excises in such a way as to require the State to levy such tax on every act, privilege or occupation within the State, or at the same rate. "The possible subjects of excise are so infinite in number and the measure of taxation with respect to the different acts, privileges and occupations is so divergent that any such requirement is too impractical for serious consideration." 26 R. C. L. 256. Take, for instance, our own system of taxation. Inheritance taxes range from 2 per cent to 6 per cent, express companies pay 5 per cent, sales taxes are 2 per cent, some insurance companies pay 5 per cent, gasoline taxes are 4 cents per gallon, use taxes are 2 per cent. Reasonable classification is permitted in this field as in others and a large discretion is vested in the legislature. In fact, reasonable classification may be said to be the key to many constitutional questions. That has been the settled constitutional law for many years, which counsel for the appellants seemed to be unwilling to admit. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 Sup. Ct. 868, 872, 81 L. Ed. 1245, 109 A. L. R. 1327. And the requirement of equal and uniform taxation substantially covers the ground of the due process and equal protection clauses of the Federal and State Constitution. Commonwealth v. Life Insurance Co., 305 Pa. 558. Forty-three years ago this Court stated in State v. Willingham, 9 Wyo. 290, 294:

"In a number of the States it has been held that the constitutional requirement of equality and uniformity does not apply at all to the taxation of occupations, owing to the fact that the taxation of all occupations

equally would work the greatest possible injustice and is impossible, in practice. But, if applicable at all, it does not deprive the Legislature of the power of dividing the objects of taxation into classes. It merely obliges the Legislature to impose an equal burden upon all those who find themselves in the same class. * * * To be uniform, taxation need not be universal. Certain objects may be made its subject, and others may be exempted from its operation, certain occupations may be taxed and others not; so some occupations may be taxed for a greater amount and others for a less, but as between the subjects of taxation in the same class, there must be an equality."

(a) The specific claim made herein by counsel for the appellants, in connection with the foregoing constitutional provision, as well as those previously considered, is that the statute in question violates these provisions because of the failure to include all employers on the taxable list, and particular complaint is made because farmers were exempted under the act. In Public Service Commission v. Grimshaw, supra, the Court considered the motor vehicle law which exempted farmers and ranchers and their employees, as well as some other persons. But the act was upheld notwithstanding these exceptions. Several cases which have considered unemployment compensation acts, similar to ours, have upheld the act notwithstanding the exceptions similar to the exceptions contained in our act: Carmichael v. Southern Coal & Coke Co., supra; Charles C. Steward Machine Co. v. Davis, supra; Howes Bros. v. Massachusetts Unemployment Compensation Commission, supra; W. H. H. Chamberlin v. Industrial Commission, 271 N. Y. 1, 2 N. E. 2d 22, 106 A. L. R. 1519; Beeland Wholesale Co. v. Kaufman, supra. Employment on farms and ranches is more or less seasonal, more so in any event ordinarily than in industry generally, and we think that the legislature was justified in considering farmers and ranchers as a class by themselves. That, too, may be said as to the

other exemptions under the statute, and the contentions made in that connection cannot be sustained.

(b) It is also contended that the legislative act violates the constitutional provisions heretofore considered because it places the burden of providing economic security upon employers only. It can hardly be denied, however, that a distinction exists between employers and employees generally. Ordinarily speaking, the cost of business, including charges and taxes, are added to the product of the employer, to be shifted on to the consumer. It is doubtful that employees are ever able to shift the burden. And while employers may not always be able to do so, still, it is clear that a sufficient distinction exists between them and their employees so as to classify them differently and leave the latter outside of the scope of the charge or tax. It was said in State v. Willingham, supra:

"The sovereignty may, in the discretion of its Legislature, levy a tax on every species of property within its jurisdiction, or on the other hand, it may select any particular species of property, and tax that only, if in the opinion of the Legislature that course will be wiser. And what is true of property is true of privileges and occupations also; the State may tax all, or it may select for taxation certain classes and leave the others untaxed. Considerations of general policy determine what the selection shall be in such cases, and there is no restriction on the power of choice unless one is imposed by the constitution."

A similar statement is contained in Cooley on Taxation, 4th Ed., Vol. 4, Sec. 1685; see also 26 R. C. L. 257, 61 C. J. 102, 107; Charles C. Steward Machine Co. v. Davis, supra. In Stulz Eagle Drug Co. v. Luke, 48 Ariz. 467, 62 Pac. 2d 1126, the Court upheld a tax which was placed on luxuries only in order to take care of unemployment. The Texas and Mississippi unemployment compensation acts, like ours, appear to levy the tax or charge against employers only, but the acts

were upheld. Tatum v. Wheeless, supra; Friedman v. American Surety Co., 137 Tex. 149, 151 S. W. 2d 570. The New York unemployment compensation law, too, taxes only the employers. The Court stated in W. H. H. Chamberlin v. Industrial Commission, supra, after referring to general taxes for the poor and unfortunates:

"The Legislature of the State, acting after investigation and study upon the report of experts, has proposed what seems to it a better plan. Instead of solely taxing all the people directly, it has passed a law whereby employers are taxed for the help of the unemployed, the sums thus paid being cast upon the public generally through the natural increase in the price of commodities. Whether relief be under this new law of the legislature or under the dole system, the public at large pays the bill. * * * I can see, therefore, nothing unreasonable or unconstitutional in the legislative act which seeks to meet the evils and dangers of unemployment in the future by raising a fund through taxation of employers only."

We cannot, accordingly, say that the constitutional provisions heretofore considered have been violated.

IV. The various decisions passing upon the constitutionality of the unemployment compensation acts have uniformly held that the purpose of the act is a public purpose, and this is true in the states which regard it as an exercise under the police power and in those which regard the levy of the charge as coming under the taxing power. In Friedman v. American Surety Company, supra, for instance, the Supreme Court of Texas, sustaining a similar statute under the taxing power, stated that:

"Unemployment, with its attendant consequences and evils, is of very vital concern to the State and to every inhabitant thereof. Unemployment always has had and always will have, a very profound influence upon the public welfare. The evils which attend it permeate every part of our social, economic and political structure. Unemployment bears in its wake,

vagrancy, crime, reduction in marriage, deterioration in health, and the destruction of family life. It not only impairs the health of the unemployed, but it impairs the health of their dependents. It lessens and often destroys patriotic impulses. It fosters and produces other evils too numerous to mention. This act was intended to lessen these evils. To our minds, no court ought to say that such a purpose is outside of the administration of government."

In Howes Bros. v. Massachusetts Unemployment Compensation Commission, supra, the Court, in upholding a similar statute under the police power, stated in part that:

"The harm to the common weal arising from unemployment of large numbers of people is beyond question. Unemployment inflicts want upon many workmen. It offers a fertile field for general discontent. This law affords some defence against that hazard. There has been widespread belief that a public exigency due to unemployment existed. The good and welfare of the Commonwealth seemed to demand relief by legislation. The attention of the General Court was given to the subject. The solution put forward after deliberation is the law here assailed. The connection between employers and unemployment is not remote and is affected by general business conditions."

It is insisted, however, by counsel for the appellants that the act in taking the money of the employer and giving it to persons who have never been in his employ for service violates the constitutional provisions of Sections 32 and 33 of Article I of our Constitution which provide that private property shall not be taken for private use, except with the consent of the owner, nor in any case without due compensation, and shall not be taken for public or private use without due compensation. And it is argued that the employer receives no compensation for what he pays; in other words, that his money is taken for the benefit of someone else without any equivalent return to himself.

However, the situation under the workman's compensation act is very similar. Under that act an employer contributes to a fund which may be paid out to persons who were never in his service. The fact that he may not receive any direct benefit from the payment which he makes is no defense. The purpose, as stated, is public. It is of general benefit to and for the welfare of all. Cooley on Taxation, supra, Section 89, says:

"The contention has often been presented that property receiving no direct benefit from a tax for a particular purpose should not be taxed for that purpose. However, it is almost unanimously held that it is no defense to the collection of a tax for a special purpose that a person liable for the tax is not benefited by the expenditure of the proceeds of the tax or not as much benefited as others."

See also Globe Grain & Milling Co. v. Industrial Commission (Utah), 91 Pac. 2d 512. In the Carmichael case, supra, the Court said:

"Nothing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the conditions to be remedied.

"A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. See Cincinnati Soap Co. vs. United States, supra. Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government—that it exists primarily to provide for the common good. A corporation cannot object to the use of the taxes which it pays for the maintenance of schools because it has no children. Thomas v. Gay, 169 U. S. 264, 280, 18 S. Ct. 340, 42 L. Ed. 740. This Court has repudiated the suggestion,

whenever made, that the Constitution requires the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer, or that he can resist the payment of the tax because it is not expended for purposes which are peculiarly beneficial to him."

And what is true of a tax must be equally true of a charge under the police power, whether properly called a "tax" or not.

V. It is also contended that the act in question is in violation of Section 6 of Article XVI of our Constitution in that the payments to be made to the unemployed are gratuities or donations which, under that constitutional provision, may be made to the poor, but which, under the statute in question, are not limited to those who are indigent, but are made to all unemployed alike, even though they may happen to be affluent. We think, however, that the legislature has the right to take into consideration the difficulties which may be encountered in the administration of the act. Carmichael v. Southern Coal & Coke Co., supra. There can scarcely be any doubt that the ordinary industrial worker would be affected adversely by reason of unemployment. It would ordinarily be only a question as to the degree or extent of his need. To put upon the unemployment compensation commission the burden to investigate in each case whether the unemployed worker had saved some for a rainy day, and the amount of it, whether or not he is in actual need, and the degree of the need, would be almost intolerable, if not impossible of accomplishment, and would often have a tendency to delay payments when most needed, and thus to that extent nullify the benefits intended to be accomplished under the statute and thwart the economic welfare therein intended. To condemn the whole legislative act because

in isolated instances the payment made to an unemployed workman might seem to be in the nature of a gratuity, does not appeal to us to be reasonable. We think we should consider the rule of probability, and that is, that in the ordinary case the unemployed workman is in need of the payment under the act. In State v. Snyder, 29 Wyo. 199, 218, 212 Pac. 771. This Court, in speaking of exemptions for veterans, stated that:

"We have no hesitation in declaring that the statute may be properly assumed by the court as having been intended to promote the public welfare, and that it must be regarded as having that effect and as a statute for the accomplishment of a public purpose. That being its purpose and effect it cannot be held, we think, to amount to violation of the provisions of Section 6 of Article XVI."

In State v. Carter, 30 Wyo. 22, 32, 215 Pac. 477, in speaking of an appropriation on account of a public officer who had been killed, we stated that appropriations of that kind are analgous to payments under the workman's compensation statute; that payments under the latter are not donations but that the aim of the statute is to further natural and social justice—a public purpose. The purpose of the unemployment compensation act is not far removed from the purpose of the workman's compensation act; both are intended to recognize and further a public purpose. Supporting the poor has been a problem for centuries. The problem of unemployment is a special situation, not in existence when the constitution was adopted, and has distinctive features which, we think would authorize the legislature to treat the unemployed contemplated in the act as a distinctive class, to be dealt with separately in furtherance of a public purpose and the general welfare of the people of the state. The point has been considered in Friedman v. American Surety Company,

supra. In that case the court held that the payments should not be considered as a gratuity but that "the right of such employees to enjoy or participate in the fund in time of unemployment should be regarded as a part of their compensation or wages." See to a similar effect, Tatum v. Wheeless, supra. Section 23 of the Alabama Constitution forbids the exercise of taxation "for the benefit of railroads, or any other kinds of corporations, other than municipal, or for the benefit of any individual or association." But Section 88 of the same Constitution provides that "it shall be the duty of the legislature to require the several counties of the state to make adequate provision for the maintenance of the poor." The Supreme Court of that State, in Beeland Wholesale Co. v. Kaufman, supra, held that the unemployment compensation act was not in violation of Section 23 of the Constitution, and that in view of the purposes of the act "the State is not dependent upon Section 88, Constitution, to help the poor. It is to prevent or break widespread economic depression and its demoralizing influences." In Carmichael v. Southern Coal & Coke Co., supra, the Court, speaking on this point, stated:

"The present scheme of unemployment relief is not subject to any constitutional infirmity, as respondents argue, because it is not limited to the indigent or because it is extended to some less deserving than others, such as those discharged for misconduct. While we may assume that the state could have limited its award of unemployment benefits to the indigent and to those who had not been rightfully discharged from their employment, it was not bound to do so. Poverty is one, but not the only evil consequence of unemployment. Among the benefits sought by relief is the avoidance of destitution, and of the gathering cloud of evils which beset the worker, his family and the community after wages cease and before destitution begins. We are not unaware that industrial workers are not an affluent

class, and we cannot say that a scheme for the award of unemployment benefits, to be made only after a substantial 'waiting period' of unemployment, and then only to the extent of half wages and not more than $15 a week for at most 16 weeks a year, does not effect a public purpose, because it does not also set up an elaborate machinery for excluding those from its benefits who are not indigent. Moreover, the state could rightfully decide not to discourage thrift. Mountain Timber Co. v. Washington, supra, 243 U. S. 219, 240, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642. And as the injurious effects of unemployment are not limited to the unemployed worker, there is scope for legislation to mitigate those effects, even though unemployment results from his discharge for cause."

We think, accordingly, that the instant contention should be overruled.

In conclusion, the only other section of our constitution not already considered which appears to have a bearing herein is Section 35 of Article III which provides that "except for public interest on public debt, money shall be paid out of the treasury only on appropriations made by the legislature, and in no case otherwise than upon a warrant drawn by the proper officer in pursuance of law." A similar constitutional provision was considered by the Supreme Court of California, in Gillum v. Johnson, 7 Calif. 2d 744, 62 Pac. 2d 1037, and it was held that the provisions of the unemployment compensation act of that State, similar to the provisions of our own act, constitute a continuing appropriation for a specific purpose, and that the act is not in violation of the constitutional provision just mentioned. It would seem, accordingly, that the statute in question should be held valid under the taxing power of the state and we cannot say that that is not true as well under the police power. Since, however, the tax or charge imposed upon the employers is

462

imposed for a specific ultimate purpose it should, of course, be limited to an amount reasonably sufficient, and sufficient only, to accomplish that purpose; as we have seen, we cannot say that it is not so limited.

We, accordingly, answer all the constitutional questions submitted to us in the negative.

KIMBALL, Ch. J., and RINER, J., concur.