**GENERAL CHEMICAL CORPORATION, Appellant (Petitioner),**

v.

**UNEMPLOYMENT INSURANCE COMMISSION, DIVISION OF UNEMPLOYMENT INSURANCE, DEPARTMENT OF EMPLOYMENT, Appellee (Respondent).**

No. 94–241.

Supreme Court of Wyoming.

Sept. 15, 1995.

Alan B. Minier of Rothgerber, Appel, Powers & Johnson, Cheyenne, for appellant.

Joe Scott, Sr. Assistant Attorney General, Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

This case presents a question of statutory interpretation in which we review General Chemical Corporation's contention that the Unemployment Insurance Commission improperly determined the Corporation was not entitled to the benefit of a favorable experience rating for the purpose of imposing the unemployment compensation contribution rate.

We affirm.

General Chemical Corporation tenders this issue:

> Did the Commission act arbitrarily, capriciously, or unlawfully, within the meaning of W.S. § 16–3–114(c), by approving a determination of the Unemployment Insurance Division, or otherwise itself determining, that General Chemical Corporation had no experience period within the meaning of the Employment Security Law, W.S. § 27–3–101, *et seq.,* and hence that General Chemical Corporation should pay employment security taxes at the average rate for its industrial classification?

The Commission summarizes the issue differently:

> Whether the decision of the Unemployment Insurance Commission, assigning General Chemical Corporation a 4.08 percent, "new employer" tax rate for 1992 is supported by substantial evidence and is in conformity with law?

As a first step in outlining the factual background of this case, we note all parties agree General Chemical Corporation (Corporation) is, and was, an employer obligated to make employment wage contributions to the Unemployment Insurance Department (Department)[1]. WYO.STAT. §§ 27-3-502 (Supp. 1994) and 27-3-503 (1991).

The rub of this appeal came about as follows. In October 1986, General Chemical Corporation became the managing partner of General Chemical (Soda Ash) Partners (Partnership). From that point in time until June 30, 1992, the Corporation was the entity which paid contributions to the Department. On June 30, 1992, the Partnership took on a new form, but the Corporation remained the managing partner. For purposes which have no significance for this appeal, and which the Corporation characterizes as a "formality", the Corporation asked the Department to change the Unemployment Insurance Account, which had been in its name, to the name of the Partnership. To provide a modicum of lucidity, but without unduly muddling the issues, we can state the Partnership retained some of the employees who had previously worked for the Corporation and the Corporation kept the remainder of the affected employees. The dilemma was, beginning June 30, 1992, there were two entities having accounts with the Department where once there had been one. The old account, along with its experience period and rating[2], went to the Partnership. A different account was established for the Corporation. It is important to note at this juncture the Department did not initiate the creation of two accounts—that was done at the Corporation's request for the Corporation's private objectives. The Partnership, because of a favorable experience rating based on the history it acquired from the Corporation, was required to pay only a very low contribution rate. The Corporation, because it was "new," had to pay contributions at a rate four times higher than the Partnership. The Corporation sought review of that determination and the Unemployment Insurance Commission (Commission) affirmed. Upon further review, the district court affirmed the Commission's decision.

The Corporation's claim is the Department must be required, in the interests of logic, as well as sound public policy, to allow the Corporation to also benefit from the favorable experience rating it had created[3]. WYO. STAT. § 27-3-504 (1991) requires that "[s]eparate accounts shall be maintained for each employer and benefits paid to an individual shall be charged to the account of his base period employer." WYO.STAT. § 27-3-503(f) (1991) provides:

> (f) Any new employer not previously subject to this act or having no established experience period shall pay contributions at a rate equal to the average rate of contributions paid by his major industrial classification for the calendar year preceding the year in which he first employed workers in this state * * *.

An employer which acquires another's business is provided for by the act:

> An employing unit acquiring the trade, organization, business or substantially all the assets of an employer subject to this act shall assume the employer's account,

---

1. The unemployment compensation law, an insurance program, originated as a depression era program designed to relieve the crushing burden of unemployment on workers and their families. 1937 WYO.SESS.LAWS CHAP. 113; *Unemployment Compensation Comm'n v. Renner*, 59 Wyo. 437, 143 P.2d 181 (1943); 1983 WYO.SESS.LAWS.CHAP. 114, § 2.

2. *See* WYO.STAT. §§ 27-3-501(a)(ii) and 27-3-503 (1991).

3. The course of proceedings below was somewhat complicated. Originally the Department determined the Partnership should be treated as a "new" employer and the Corporation was to keep the experience rating. However, the Corporation did not want it that way and protested. In response, the Department reversed the situation and transferred the Corporation's experience rating to the Partnership and treated the Corporation as the "new" employer.

benefit experience and contribution rate. If the acquiring employing unit is an employer subject to this act, the employer shall contribute at the rate in effect prior to acquisition on all wages payable for employment after acquisition until the end of the current calendar year. The department shall consolidate the separate accounts and benefit experiences and shall determine the contribution rate of the acquiring employer in accordance with this article for the calendar year following the year in which the employer notifies the department of the acquisition.

WYO.STAT. § 27-3-507 (1991).

Also of pertinence is WYO.STAT. § 27-3-508 (1991), which provides:

A joint venture composed of two (2) or more employers with accounts meeting the requirements of W.S. 27-3-503(b) and (c) shall apply in writing to the department within four (4) months after the date of formation of the joint venture for determination of a contribution rate. The department shall, upon receipt of application and pursuant to this article, assign a contribution rate based upon the benefit ratio computed on the consolidation of the separate accounts and benefit experiences of the employers for the experience period. The contribution rate shall be determined and assigned by the department to the joint venture each calendar year until its separate account and benefit experience qualify as an experience period.

■ The Department's position is that the statutes allow for several possibilities, as outlined above. The Partnership may succeed to the Corporation's experience rating; however, the Corporation then becomes a new employer because it no longer has an experience rating. The Corporation contends such a reading of the statutes is contrary to sound principles of statutory construction, as well as sound principles of public policy. The Corporation also contends there is no evidence on which to base a finding that the Corporation is a "new" employer lacking an experience period.

This is a concise statement of the rule we employ in such circumstances as these:

Against this backdrop of "legisprudence (the jurisprudence of legislation)," a useful outline of this court's method of statutory interpretation emerges. We read the text of the statute and pay attention to its internal structure and the functional relation between the parts and the whole. We make the determination as to meaning, that is, whether the statute's meaning is subject to varying interpretations. If we determine that the meaning is not subject to varying interpretations, that may end the exercise, although we may resort to extrinsic aids of interpretation, such as legislative history if available and rules of construction, to confirm the determination. On the other hand, if we determine that the meaning is subject to varying interpretations, we must resort to available extrinsic aids. If an ambiguous statute has been construed by an agency charged with administering it, we will accord deference to, but are not bound by, that construction. After all, the final construction of an ambiguous statute is a question for the court.

*Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n,* 845 P.2d 1040, 1045 (Wyo. 1993); *see also Casper Oil Co. v. Evenson,* 888 P.2d 221, 225-26 (Wyo.1995); *Wyoming Insur. Guar. Ass'n v. Woods,* 888 P.2d 192, 196-99 (Wyo.1994); *Christensen v. Oedekoven,* 888 P.2d 228, 230 (Wyo.1995); *City of Cheyenne v. Reiman Corp.,* 869 P.2d 125, 128-29 (Wyo.1994); *Thunder Basin Coal Co. v. Study,* 866 P.2d 1288, 1290 (Wyo.1994).

The Department relies principally upon the language of WYO.STAT. § 27-3-503(f), above, to sustain its determination that the Corporation must establish an experience rating of its own. The Corporation contends it is not a "new" employer. "New" means:

[H]aving existed or having been made but a short time: having originated or occurred lately: * * * recent, fresh, modern; * * * having been seen or known but a short time although perhaps existing before: recently manifested, recognized or experienced: * * * being other than the former or old: having freshly come into a relation * * * having been in a relationship, position, or condition but a short time usu. lacking full adaptation thereto. * * *

New implies that the thing was not known, thought of, manufactured, or experienced before its advent or has only recently been acquired, employed, put to use, and so on. * * *.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1522 (1986).

The question is not whether the Corporation was "new" in the sense it had just been formed, rather it is whether it was "new" in relation to the Department: "Any new employer * * * having no established experience period shall pay contributions at a rate equal to the average rate of contributions paid by his major industrial classification * * *." WYO.STAT § 27–3–503(f) (1991). The Corporation asks that we read into the statute a provision allowing for the splitting of an experience rating. We agree such a provision would be sensible, but it is not there. More importantly, the construction placed on these statutes by the Department is not illogical, unreasonable or arbitrary. *See Cartersville Candlewick, Inc. v. Huiet,* 204 Ga. 609, 50 S.E.2d 647, 652 (1948) ("It is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace a case because no good reason can be assigned why it was not included in the statute."); *St. Joseph Community Hosp. v. Employment Sec. Dep't,* 92 Wash.2d 353, 597 P.2d 393, 394–95 (1979) (hospital's theory of tax liability logical, but ignored language of statute); *Conlon Bros. Mfg. Co. v. Annunzio,* 409 Ill. 277, 99 N.E.2d 119, 122–23 (1951) (statute which categorized employers in two categories, those with five years of experience, and those with less, not arbitrary); *White v. State,* 197 S.W.2d 389, 392 (Tex.Civ.App.1946) (court may not write into statute provision allowing for transfer of experience rating that is not there); *Temporaries Inc. v. District Unemployment Compensation Bd.,* 304 A.2d 14, 18 (D.C.App. 1973) (administrative convenience and expense are alone a sufficient justification for differences in treatment; classification must only be reasonable); *Valley Metal Products Co. v. Michigan Employment Security Comm'n,* 365 Mich. 297, 112 N.W.2d 470, 475 (1961) (for example of statute which specifically allows pro rata transfer of experience rating; parties to transfer can protect by

contract or adjustment of purchase price); *McNear v. Director of Div. of Employment Sec.,* 327 Mass. 717, 100 N.E.2d 848, 850 (1951) (limiting transfer of experience ratings).

The Commission did not act arbitrarily, capriciously or unlawfully in determining the Corporation lacked an experience rating under the circumstances presented by this case and the order of the district court affirming the Commission is affirmed.

